NICHOLAS FRANCIS *vs.* THE SOMERVILLE MUTUAL INSUR-
ANCE COMPANY.

1. If the holder of a policy of insurance give notice to the company of loss, but does not give notice according to the contract of insurance, the company, will be considered as waiving the informality in the notice, if, when the notice is given, they do not object to the form of it, but object to payment on other grounds.

2. The risk is fixed by contract, but the question, whether it has been increased, is a question for the jury.

3. If a building be built adjoining the one insured, and in it are placed articles extra hazardous, and which are prohibited by the terms of the policy, it will be considered as increasing the risk, and will avoid the policy unless notice thereof is given to the company; but the contract is not violated by occasionally placing in such adjoining building or in the building insured, such articles as are, in the nature of things, necessary for the enjoyment of the premises in the usual and ordinary way.

---

This was a suit, brought by Nicholas Francis against the Somerville Mutual Insurance Company for a loss by fire, and was founded on a policy effected with the defendants by said plaintiff, on a certain dwelling house, store and furniture.

After said insurance was effected, the plaintiff built an addition to the store, and adjoining the store house, about twelve by fourteen feet, which he designed as a brewery, no notice of which was given to the company. In this addition was placed a quantity of hay, out of which the plaintiff fed his cow up to the time of the fire. The fire was first discovered in this building where the hay was, from which it communicated to the store and house, and the whole was destroyed.

The case was tried before Justice Haines, at the Hudson Circuit, in May, 1854, and a verdict found for the plaintiff for the whole amount insured, $650, with interest, making $754.90.

The case comes up on a motion by the counsel of the defendants for a new trial.

Argued before the CHIEF JUSTICE and Justices OGDEN and POTTS, by *Robeson* and *Nevius,* for the Defendants, and *Zabriskie,* for the plaintiff.

*Robeson,* for the motion.

1. Where particular articles are mentioned as extra hazardous, the province of the jury is only to find the fact; the risk is settled by contract.

2. Stipulations attached, form part of contract, as much as if contained in the body of the policy. *Duncan* v. *Sun Fire Insurance Co.,* 6 *Wend.* 488.

3. A frame shed of combustible materials was attached to one of the buildings insured, and no notice was given to the company. No such notice given of the fire, as required by the terms of the policy: there was no waiver of such notice.

4. Hay designated in policy as extra hazardous, and cannot depend on quantity. Fire originated in the hay. Stipulations in policies are express warranties. 6 *Wend.* 488.

If the hazard is increased by the insured, the company is exonerated. *Ellis on Ins.* 59, (4 *Law Lib.* 36); 3 *Harr.* 480.

Notice must be given. 6 *T. R.* 710; *Ellis on Ins.* 62, (4 *Law Lib.* 38).

Endorsements required on policies are essential part of contract. *Loomis on Ins.* 87; 1 *Phillips on Ins., chap.* 1, *p.* 26–7; 6 *T. R.* 710.

*Zabriskie,* contra.

1. Evidence was competent to go to the jury. 1 *Greenl.* § 116; 3 *Phil. Ev.* 674, *note* 489; 15 *Mass.* 380, *Welsh* v. *Barrett;* 8 *Wheat.* 326, *Nicholls* v. *Webb;* 7 *Wend.* 160; 4 *Hill* 129, *Sheldon* v. *Benham.*

2. The act of the company amounts to waiver of notice. *Angell on Ins.* 243–4–5 -6; 2 *Phillips on Ins.* § 1812 and

1813 ; 9 *Howard* 390, *Taylor* v. *Merch. Ins. Co. ;* 6 *Cush.* 342, *Clark* v. *Mutual Ins. Co. ;* 4 *Zab.* 417, *Schenck* v. *Mutual Ins. Co.*

3. There was error in the charge of the court : the question of increased risk was improperly left to the jury. 1 *Phil.* § 1036–7 ; *Angell* 152 ; 5 *Hill* 10, *Grant* v. *Howard Ins. Co. ;* 10 *Pick.* 535.

4. Verdict was not against weight of evidence. There was no proof that hay was in building at the time of the fire ; it was not stored in the building, but had been placed in adjoining building for use of family, for current use to feed cow ; therefore it was not in violation of the policy.

This clause is copied from old English policies. It is well settled that if articles are put in building for sale or use, it is not storing, within meaning of act. 6 *Wend.* 623 ; 1 *Phil.* § 883 ; *Angell* § 166–8 ; 3 *Har.* 480, *Rafferty* v. *New Brunswick Ins. Co. ;* 5 *Hill* 10, *Grant* v. *Howard Ins. Co. ;* 1 *Mood. & M.* 90, *Dobson* v. *Sotheby,* (in the last case fire resulted from burning tar in the building) ; 10 *Pick.* 435, *Curry* v. *Commonwealth Ins. Co.,* jury found no increase of risk.

*Nevius,* in reply.

The court should have charged the jury, that if new building was erected without notice, and used for storing combustible matter, and fire originated there, verdict should be for defendant.

The property was surveyed on minute description, and insured as it stood. Risk was increased in two things, in addition to building and in storage of hay. No notice was served according to terms of contract.

POTTS, J. This action was commenced, by Francis against the Somerville Mutual Insurance Company, to recover upon a policy of insurance. The dwelling house, store, and furniture insured were destroyed by fire, the

loss exceeding the amount insured, which was $650. The verdict was for the full amount and interest.

The counsel of the defendants now move that the verdict be set aside, on the ground that it is clearly against the evidence in the cause ; and they insist—

1. That it did not appear at the trial that notice of the occurrence of the fire had been given to the company, according to the contract of insurance.

2. That it did not appear that such particular account of the loss or damage and proofs, as the contract required, was ever given.

3. That it was in evidence that the risk was changed by the insured subsequent to effecting the insurance, by erecting a frame building adjoining the store without notice to the company, contrary to the conditions of the policy ; that a quantity of hay, an article extra hazardous, and expressly prohibited, was deposited in this building, and that the fire originated in the hay.

As to the first two points made, there was some evidence of a substantial compliance with the conditions of the policy on the part of the insured ; and there was also evidence that the company put their refusal to pay, originally, not on these points, but solely on the third ground. If this was so, it amounted to a waiver of the conditions of the contract in these particulars.

The question of compliance, or, if no compliance, whether there was a waiver, was fairly put to the jury by the court, and I do not see that their answer in the affirmative was unwarranted by the evidence before them. The verdict ought not to be disturbed for this.

The third point made is a more serious one.

One of the conditions of the policy was, that " all members owning property assured in the company, in which the risk has been changed, either within itself or by surrounding and adjacent buildings, shall give notice thereof to the directors in writing as early as possible, and shall

pay such additional premium as they shall determine."
And the policy expressly provided that if, after the insur-
ance, the buildings should be used for the purpose of stor-
ing therein any of the articles denominated hazardous (of
which hay was one), unless specially agreed to by the com-
pany, the policy should be for the time being of no force
or effect.

The facts clearly proved were—

1. That subsequent to the insurance, the plaintiff erected
a small addition to the store, adjoining the store house,
which he designed for a brewery. It was about twelve by
fourteen feet. No notice of this erection was given the
company.

2. A few days before the fire, which occurred on the
night of January 1, 1851, a quantity of hay was placed in
this new building, out of which the plaintiff's cow was
fed up to the time of the fire.

3. The fire occurred in this building where the hay was,
and when first discovered was all over the hay. It com-
municated from this building to the store and house, and
the whole was destroyed.

The court instructed the jury, that it was a question of
fact for them to determine whether the risk was increased
by the additional building or by putting the hay in it; and
that if it was, the plaintiff could not recover. The jury,
in finding a verdict for the plaintiff, determined that there
was no increase of risk.

I think this verdict was clearly contrary to the evidence;
and that if the charge was right the verdict was wrong. I
do not put my opinion upon the ground that the building
erected, of itself, increased the risk, nor that the placing
of hay in it for a temporary purpose, to be used in feed-
ing the plaintiff's cow, was a storing of hay, within the
meaning of the contract. But that the building partly
filled with hay; the building combined with the use to
which, at the time of the fire, it was appropriated, was an

increase of the risk, which, without notice to the company, was a violation of the contract on the part of the insured.

There is a plain and palpable distinction between this case and that class of cases in which it has been held that the keeping of spirituous liquors, oils, millinery, drugs, &c., in a house for family use, is not a violation of a policy which prohibits the storing of such articles in such building. For besides the fact, that this is no storing, within the meaning of that term, the insurer will always be presumed to know that articles of this kind, or some of them, are kept by every family for domestic use, and to have contemplated that risk. But it cannot be presumed that an insurer ever contemplates that hay, for any purpose or in any quantity, will be kept in a dwelling house or store.

The strongest case I have met with in the books for the plaintiff is that of *Dobson* v. *Sotheby*, 1 *Mood. & Malk.* 90. There the building destroyed was insured as one in which no fire was kept and no hazardous goods deposited. The building required tarring, and a fire was consequently lighted in the inside, and a tar barrel was brought into it for the purpose. Through the negligence of the plaintiff's servant the tar boiled over, took fire, communicated with that in the barrel, and the premises were burned down. The judgment was for the plaintiff. But the court put it upon the ground that, in the absence of any stipulation that no fire and no hazardous goods should ever be introduced upon the premises, the condition must be understood as forbidding only the habitual use of fire and the ordinary deposit of hazardous goods, and not their occasional introduction, as in this case, for a temporary purpose connected with the occupation of the premises; and added, that "the common repairs of a building necessarily require the introduction of fire upon the premises, and one of the great objects of insuring is security against the negligence of servants and workmen."

The principal to be deduced from this and similar cases amounts only to this, that a condition expressed in general terms, that certain uses are not to be made of a building, and certain articles are not to be kept in it, which are specified as hazardous, is not violated by such occasional or partial variances from the strict letter of the condition, as in the nature of things are necessary for the enjoyment of the premises in the usual and ordinary way, because it cannot reasonably be supposed that these were understood or intended by the parties to be within the prohibition.

But in the case before us it was made a condition, that whenever the risk should be changed, by any cause within or without the building, the company should be notified. A building was erected adjoining the store, inclosed, and hay enough placed in it to be the occasion of the destruction of the whole by fire. The article of hay was one of the hazardous articles specified in the policy. It was placed there temporarily it is true, but kept there long enough to have been the cause of the loss; put there for a domestic use it is true, but a use to which the parties to the contract certainly never intended the house or store to be even temporarily applied. Clearly the court were right in telling the jury, that if by this the risk was increased, the plaintiff could not recover.

Is it not clear that the risk was increased? In the first place, as we have seen, hay was specified in the policy as a hazardous article. In the second place, the rates of insurance fixed by the company, as specified on the policy, was some thirty or forty per cent. higher on barns and stables, buildings in which hay is usually kept, than on dwellings and stores. In the third place, the premises were situated in the manufacturing village of Raritan, where a building with hay in it would probably be more dangerous than in the country. And in the fourth place, the fire actually originated in this building. Now I think any man would feel that the erecting of a shed adjacent

to his house or store in such a location, and putting hay in it, endangered his property. Every man would feel that in doing so he increased the risk of fire. No prudent man, no man who acted with proper consideration and caution, would expose himself to such a hazard if he could avoid it. The result shows the imprudence of the plaintiff's conduct; the fire occurred at the dangerous point. The spirit of the condition in the policy was violated, and the loss was the consequence.

I am willing to go as far as any well considered case has gone in construing these contracts of insurance favorably for the insured. But insurance companies ought to be protected from every reckless and careless disregard of the terms of their contracts on the part of the insured; and I am constrained to say that, in my opinion, the verdict in this case should be set aside.

C. J. GREEN and OGDEN, J., concurred.

CITED in Basch v. Hum. M. Fire and M. Ins. Co., 6 Vr. 432; Jones v. Mech. Fire Ins. Co., 7 Vr. 36; State Ins. Co. v. Maackens, 9 Vr. 568.